IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

DAVID L. MORELAND,          *
                            *
          Plaintiff,        *
                            *
                            *
     v.                     *          CV 214-143
                            *
CHIEF JUDGE LISA GODBEY WOOD, *
et al.,                     *
                            *
          Defendants.       *

---

**O R D E R**

---

This case presents the Court with allegations of an elaborate conspiracy accusing Defendants of treason, trespass of law, corruption, and racism. In response to what he perceives to be an orchestrated and deliberate scheme to sabotage his 2008 employment discrimination lawsuit, Plaintiff David L. Moreland ("Moreland") filed the instant 100-page complaint against the judges in his case, a clerk at the Eleventh Circuit Court of Appeals, opposing counsel, and his former employer and co-workers. Now before the Court are several motions to dismiss (docs. 30, 31, 33, & 47), supplemental motions to dismiss (docs. 40 & 43), a motion to amend the complaint and transfer venue (doc. 36), a motion for entry of default (doc. 37), a motion to dismiss Defendant Calvin Lawson without prejudice (doc. 38), a motion to withdraw the motion to dismiss Defendant Calvin Lawson

(doc. 42), and a motion for oral argument (doc. 55), all of which were filed over just two months' time.

## I. BACKGROUND

Moreland has sued three groups of individuals. First, Moreland named Chief Judge Lisa Godbey Wood, Magistrate Judge James E. Graham, and deputy clerk of the Eleventh Circuit Court of Appeals Lois Tunstall (collectively "the Judicial Defendants").[1] In the second category, Moreland names the law firm Brown, Readdick, Bumgartner, Cater, Strickland & Watkins and attorneys of that firm Terry Readdick and Garret Meader ("the Attorney Defendants"), who were opposing counsel in the discrimination lawsuit. Finally, Moreland names his former employer Glynn Iron & Metal, Inc. and his former boss and a number of co-workers, Michael Fairman, Tony Corbett, Eddie Corbett, Beth Spain, Shaun Conway, William Lewis, Calvin Lawson, and Norberto Vazquez ("the Glynn Iron Defendants").[2]

---

[1] As will be discussed in greater detail below, Moreland also moves to amend his complaint to specifically name all judges on the Eleventh Circuit Court of Appeals. In his complaint as it now stands, he simply names "United States Court of Appeals Eleventh Circuit Judges Unknown."

[2] Throughout his complaint, Moreland apparently misspells (1) Clerk Tunstall's last name; (2) Terry Readdick's first name; (3) Tony Corbett's and Eddie Corbett's last names; (4) Beth Spain's last name; (5) Shaun Conway's first name; and (6) Norberto Vazquez's first name. Throughout this Order, the Court uses the spelling advanced by the various Defendants.

## A. The Underlying Discrimination Lawsuit

On August 13, 2008, Moreland filed suit against Michael Fairman and Glynn Iron & Metal, Inc. alleging employment discrimination based on race. (Moreland v. Glynn Iron & Metal, Inc. et al., No. 2:08-cv-104, Doc. 1 (S.D. Ga. Aug. 13, 2008).) In addition to his complaint, Moreland requested that the court appoint him an attorney, which was denied by Judge Graham. (Id., Docs. 4-5.) Thereafter, Moreland moved to voluntarily dismiss his complaint without prejudice, which was granted. (Id., Docs. 7-8.) Moreland later reopened his case. (Id., Doc. 10.) The late Judge Anthony Alaimo presided over the case. Before Judge Alaimo's passing, both parties filed motions for summary judgment, on which Judge Alaimo heard argument December 21, 2009. (Id., Docs. 44, 48, 63.) Both motions for summary judgment were denied. (Id., Doc. 64.) Following Judge Alaimo's passing, Chief Judge Wood was reassigned the case. (Id., Doc. 68.) Chief Judge Wood held a status conference on March 22, 2010 and heard argument on a pending defense motion to reconsider the summary judgment ruling. (Id., Doc. 79.) Chief Judge Wood later granted the motion for reconsideration in part, dismissing Michael Fairman in his individual capacity, but denied the motion as to Glynn Iron & Metal, Inc. (Id., Doc. 84.)

From this point forward, the Court refers to Moreland's 100-page, 212-paragraph handwritten complaint for its understanding of the alleged conspiracy. Given the disjointed nature of Moreland's complaint, the Court summarizes the allegations in bullet format:

- During discovery, the Attorney Defendants "acted in bad faith interference in a [sic] investigation" and withheld information to which Moreland was entitled because of his race and pro se status. (Compl., Doc. 1, ¶¶ 26, 200.)

- The hearing on the motion for reconsideration was simply "an opportunity to find a way to get the case thrown out of court." (Id. ¶ 32.)

- Chief Judge Wood and Judge Graham "were having ex parte communication behind [Moreland's] back plotting against him and the United States Government."[3] (Id. ¶ 35.)

- The Attorney Defendants fabricated the truth in the hearing on the motion for reconsideration by forcing Luther Stephenson, Johnny Reese, and Reggie Nixon to sign affidavits against their will. (Id. ¶ 212)

- The Attorney Defendants would not work with Moreland on meeting to discuss pretrial issues. (Id. ¶ 215.)

- At the pretrial conference, Chief Judge Wood gave Moreland until 5:00 p.m. to properly tag and initial all exhibits and to submit certain exhibits not brought to the conference, while the defendant was given until that Friday. (Id. ¶¶ 38, 216.)

---

[3] Moreland additionally alleges that Judge Graham and Defendant Readdick have been friends for more than 30 years. (Id. ¶ 36.)

- Defendant Meader acted in bad faith during the pretrial conference "to further the conspiracy ex parted [sic] between the conspirators of the conspiracies" and that the Attorney Defendants filed "three objection [sic] to Plaintiff tr[ia]l exhibits to misrepresentate [sic], and mislead the jury hiding and concealing the truth violating Plaintiff [sic] right [sic] under the Constitution." (Id. ¶¶ 37, 39.)

- On September 14, 2010, Judge Graham held a settlement conference during which he "tried to intimidate the plaintiff into settling for 3,000.00 dollars" and "acted as an attorney for the defendant Michael Fairman, and his attorneys." (Id. ¶ 40.) When Moreland told Judge Graham that he would accept 1.5 million to settle his claims, he alleges that Judge Graham responded "oh no we will never pay you that. You can take your chances with a jury, but no jury every [sic] found a white man guilty of race discrimination in this Court." (Id.)

- Following the settlement conference, Judge Graham had Chief Judge Wood move the trial date from October 25, 2010 to December 6, 2010 "so the conspirators can make sure the conspiracies is [sic] done correctly." (Id. ¶ 41.)

- Judge Graham and Chief Judge Wood removed Moreland's evidence based on hearsay, Rule 801, and authentication issues — which he claims did not apply — and Chief Judge Wood "tried to intimidate [Moreland] before and during trial, stating 'if' Plaintiff tries to use any evidence at trial, Plaintiff could be held in contempt of court and get in a lot of trouble." (Id. ¶¶ 42-45.) Moreland alleges that the evidence was actually removed to mislead the jury, force a different outcome, and discriminate against him because his race and pro se status. (Id. ¶¶ 42-44.)

- Chief Judge Wood and Judge Graham directed court personnel to engage in the conspiracy. (Id. ¶ 229.)

Moreland additionally makes a number of more general allegations regarding the biases of Chief Judge Wood and Judge Graham. (Id. ¶¶ 225-29, 210-11[4].)

Following the trial, the jury returned a defense verdict. (Id. ¶ 46.) During this trial, Moreland additionally alleges that the Attorney Defendants presented false evidence to the jury. (Id. ¶ 212.) Moreland then filed a notice of appeal with the Eleventh Circuit, followed by a motion for new trial, which was denied on jurisdictional grounds by Chief Judge Wood. (Moreland v. Glynn Iron & Metal, Inc. et al., No. 2:08-cv-104, Docs. 130, 134, 164 (S.D. Ga. Aug. 13, 2008).) On November 22, 2011, the Clerk of the Eleventh Circuit Court of Appeals dismissed Moreland's appeal for want of prosecution because Moreland "failed to file an appellant's brief and record excerpts within the time fixed by the rules[.]"[5] (Id., Doc. 168.) According to Moreland, Chief Judge Wood and Judge Graham convinced the Court of Appeals to conceal the truth by dismissing the appeal. (Compl. ¶ 49.)

Plaintiff alleges that as a result of this conspiracy, he "is still being black ball by the conspirators" and is

---

[4]     Paragraphs 210-211 refer to those on page 95 of Moreland's complaint. Moreland begins renumbering his complaint at various points.

[5]     Though signed by John Ley, the clerk of the Eleventh Circuit Court of Appeals, Lois Tunstall seems to have been the deputy clerk who prepared the dismissal order.

"suffering emotional and physically from the conspirators' reckless malicious[] action." (Id. ¶¶ 47, 50.)

## B. Procedural History

Moreland filed his present complaint on September 17, 2014, nearly four years after the conclusion of his trial.[6] After attempting to serve the Judicial Defendants, including the judges of the Eleventh Circuit Court of Appeals, United States Magistrate Judge Brian Epps ordered Moreland to cease and desist all efforts to serve persons not listed in the complaint and instructed Moreland on the appropriate method of serving employees of the United States. (Doc. 10.) After Moreland attempted to personally serve Judge Graham and Chief Judge Wood, he was shown and read Federal Rule of Civil Procedure 4 and the deputy clerk offered to issue another set of summons. From January 5 to January 9, 2015, Moreland served all of the named Defendants save one: Calvin Lawson. (Docs. 17-28.) On January 16, 2015, Moreland moved for an extension of time to serve Defendant Lawson, which was granted by Judge Epps. (Docs. 16, 29.) Moreland was given until February 23, 2015 to serve Defendant Lawson. (Doc. 29.) Moreland then moved on February 18 to dismiss Defendant Lawson without prejudice, asserting that he could not find him. (Doc. 38.) Just five days later,

---

[6] On October 6, 2014, Moreland also filed a "Motion for Recusal, Removal, Disqualification or Impeachment" of all district judges in the Eleventh Circuit, as well as a motion to transfer venue to the District of Columbia. Both motions were denied. (Docs. 6, 11, 13.)

Moreland moved to withdraw his motion to dismiss, stating that he did not realize Defendant Lawson had been found and served on February 10, 2015. (Doc. 42.)

The Attorney Defendants filed two motions to dismiss, one on behalf of the individually-named attorneys and one on behalf of the law firm, each on January 26, 2015. (Docs. 30, 33.) The Glynn Iron Defendants likewise filed a motion to dismiss on that date. (Doc. 31.) The Judicial Defendants have moved to dismiss Moreland's complaint as well. (Doc. 47.)

On February 6, 2015, Moreland moved to amend his complaint to specifically name all Eleventh Circuit judges and to transfer the case to the United States Court of Appeals District of Columbia Circuit. (Doc. 36.) Then, on February 12, 2015, Moreland moved for entry of default against all named defendants. (Doc. 37.) In light of Moreland's motion to amend his complaint, the Attorney Defendants and the Glynn Iron Defendants each filed supplemental motions to dismiss, asserting that the amended complaint Moreland seeks to file supersedes his original complaint and does not contain any allegations against them sufficient to state a claim. (Docs. 40, 43.)

## II. DISCUSSION

As detailed above, the Court is presented with many pending motions, both by Defendants and Moreland. To summarize, each

Defendant has filed a motion to dismiss — some have filed two — and Moreland has filed (1) a Motion to Amend; (2) a Motion to Transfer Venue; (3) a Motion for Entry of Default; (4) a Motion to Dismiss Defendant Lawson and a Motion to Withdraw that motion; and (5) a Motion for Oral Argument. First, the Court addresses the Judicial Defendants' Motion to Dismiss on judicial immunity grounds, as well as Moreland's Motion to Amend his complaint to add the individual Eleventh Circuit judges. Next, the Court addresses Moreland's complaint and the Attorney Defendants' and Glynn Iron Defendants' Motions to Dismiss. Finally, the Court rules on the remaining motions — the Motion to Transfer Venue, Motion for Entry of Default, Motion to Dismiss Defendant Lawson, Motion to Withdraw that Motion to Dismiss, and Motion for Oral Argument.

## A.    Absolute Judicial Immunity

"Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'" Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000) (quoting Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)). Indeed, "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." William B. Cashion Nev. Spendthrift Trust v. Vance, 552 F. App'x 884, 885

(11th Cir. 2014) (quoting <u>Pierson v. Ray</u>, 386 U.S. 547, 553-54 (1967)). "This immunity applies even when the judge is accused of acting maliciously and corruptly," <u>Pierson</u>, 386 U.S. at 554, or when "the judge's acts are in error . . . or were in excess of his or her jurisdiction." <u>Bolin</u>, 225 F.3d at 1239

The Supreme Court has recognized just two exceptions to this broad grant of immunity: (1) for actions taken in a non-judicial capacity and (2) for actions taken in the complete absence of all jurisdiction. <u>Vance</u>, 552 F. App'x at 886.

> Whether a judge's actions were made while acting in his [or her] judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity.

<u>Sibley v. Lando</u>, 437 F.3d 1067, 1070 (11th Cir. 2005). Second, determining whether a judge acted in "complete absence of all jurisdiction" requires an inquiry into whether the court had subject matter jurisdiction over the claim. <u>Wash. Mut. Bank v. Bush</u>, 220 F. App'x 974, 975-76 (11th Cir. 2007) (per curiam). The Supreme Court has provided guidance in determining whether a judge acted in complete absence of jurisdiction or simply acted in excess of jurisdiction:

> [I]f a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences

being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convincted [sic] to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked.

Bradley v. Fisher, 80 U.S. 335, 352 (1871).

Judicial immunity also extends beyond judges. Non-judicial officials, such as clerks, enjoy quasi-judicial immunity where their "official duties have an integral relationship with the judicial process." Caffey v. Ala. Sup. Ct., 469 F. App'x 748, 751 (11th Cir. 2012)(internal quotations omitted). See also Hyland v. Kolhage, 267 F. App'x 836, 842 (11th Cir. 2008) ("Court clerks have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction[.]" (internal quotations omitted)); Ghee v. United States, No. 1:10-cv-0381, 2013 WL 362858, at *2 (N.D. Ga. Jan. 30, 2013) ("To the extent [the plaintiff] intends to assert claims against the Eleventh Circuit

judges or clerk based on the dismissal of her appeal, those individuals have absolute judicial immunity.").

i. *Chief Judge Wood and Magistrate Judge Graham*

As best the Court can discern, Moreland makes the following allegations against Chief Judge Wood and Judge Graham:

1. Chief Judge Wood's hearing on the motion for reconsideration was simply "an opportunity to find a way to get the case thrown out of court." (Compl. ¶ 32.)

2. Chief Judge Wood and Judge Graham "were having ex parte communication behind [Moreland's] back plotting against him and the United States Government." (Id. ¶ 35.)

3. Judge Graham and Defendant Readdick have been friends for more than 30 years. (Id. ¶ 36.)

4. At the pretrial conference, Chief Judge Wood gave Moreland until 5:00 p.m. to properly tag and initial all exhibits and to submit certain exhibits not brought to the conference, while the defendant was given until that Friday. (Id. ¶¶ 38, 216.)

5. Judge Graham tried to intimidate Moreland into settling his claims and said "no jury every [sic] found a white man guilty of race discrimination in this Court." (Id. ¶ 40.)

6. Judge Graham had Chief Judge Wood move the trial date from October 25, 2010 to December 6, 2010 "so the conspirators can make sure the conspiracies is [sic] done correctly." (Id. ¶ 41.)

7. Judge Graham and Chief Judge Wood removed Moreland's evidence based on rules of evidence that did not apply in order to force a different outcome, mislead the jury, and discriminate against Moreland based on his race and pro se status. (Id. ¶¶ 42-45.)

8. Chief Judge Wood tried to intimidate Moreland by stating if he attempts to use excluded evidence, he would be in contempt of court. (<u>Id.</u>)

9. Chief Judge Wood and Judge Graham directed court personnel to engage in the conspiracy. (<u>Id.</u> ¶ 229.)

10. Chief Judge Wood and Judge Graham convinced the Eleventh Circuit Court of Appeals to conceal the truth by dismissing the appeal. (<u>Id.</u> ¶ 49.)

11. Chief Judge Wood and Judge Graham allowed their biases and prejudices to inform their decisions, which contradicts their oath of office.

Given the substantial overlap in allegations against these Judges, the Court addresses the applicability of immunity as to both of them concurrently.

First, the Court finds that Chief Judge Wood and Judge Graham were, at all times, acting within their judicial capacities. All of the above-mentioned allegations refer to various stages in litigation, ranging from pre-trial proceedings to appeal. Indeed, the crux of Moreland's complaint is that during the course of the litigation, Chief Judge Wood and Judge Graham allowed their own personal biases to influence their decisions and that they engaged in a conspiracy with the other Defendants to further those biases. Moreland never alleges that he dealt with the Judges on an informal or personal basis, but

rather his entire claim centers on proceedings in his employment discrimination case.

As to this factor, the law is clear: "[I]t is the nature of the act and not the intention with which it was done which resolves the question of whether it was a 'judicial' act." Patterson v. Aiken, 628 F. Supp. 1068, 1074 (N.D. Ga. 1985). Any perceived motivation for the Judges' rulings would be appropriately categorized as the intention of the act, and not the nature of the act. It is plain to this Court that evidentiary rulings, holding status conferences and hearings, ruling on motions, and case management are all judicial in nature. Even Moreland's claim that Judge Graham had a personal relationship with opposing counsel would not hinder the applicability of judicial immunity. See Sheikh v. Foxman, No. 6:12-cv-442, 2012 WL 1166236, at *4 (M.D. Fla. Apr. 9, 2012) (finding immunity barred any claim based upon the judge's relationship with opposing counsel). Thus, viewed in the context of the Sibley factors, the Court finds that the first exception to judicial immunity has not been met. See also Cuyler v. U.S. Dist. Ct., No. 6:11-cv-1225, 2011 WL 5525935, at *2 (M.D. Fla. Nov. 14, 2011) (applying judicial immunity when federal judges were alleged to have willfully and intentionally dismissed valid claims, ignored rules and laws, directed the

clerk to close cases, refused hearings, and threatened the plaintiff with sanctions).

Turning to the second exception, the record is similarly clear that Chief Judge Wood and Judge Graham did not act in clear absence of all jurisdiction. Indeed, Moreland himself invoked the jurisdiction of the Southern District of Georgia, Brunswick Division in filing his employment discrimination lawsuit. It appears to the Court that Moreland has confused the ability to act in excess of jurisdiction with acting in the absence of jurisdiction in the first place.

Here, the Supreme Court's illustration in Bradley proves most beneficial. If Chief Judge Wood and Judge Graham were probate judges, then they would have jurisdiction only to consider wills and trusts. If they were to make rulings on Moreland's discrimination suit, they would be acting in complete absence of jurisdiction. Federal judges, however, have jurisdiction to decide discrimination cases. Thus, if the judges were to make up their own set of discrimination laws and apply them to impose liability on an individual, they would not be acting in the complete absence of jurisdiction but rather would be exceeding the scope of their jurisdiction. The same logic applies to the instant case.

Here, Chief Judge Wood and Judge Graham clearly had subject matter and personal jurisdiction over the case. Moreland raised

claims under Title VII, a federal law, and invoked the jurisdiction of the federal court in Brunswick, Georgia. Taking the facts alleged in Moreland's complaint as true — which this Court must do on a motion to dismiss — at best Moreland states that Chief Judge Wood and Judge Graham exceeded the scope of their jurisdiction by engaging in improper behavior in managing the case. In no way does that, however, divest them of jurisdiction in the first place. Indeed, Moreland appears to recognize as much when he states that Chief Judge Wood and Judge Graham acted outside their job description and contrary to their Oath of Office. Such an allegation would not alter the court's subject matter jurisdiction.

    *ii. Clerk Tunstall*

Moreland makes just one allegation against Defendant Tunstall: that she dismissed Moreland's appeal in an attempt to conceal the lower court's actions. That Order, which went out "FOR THE COURT — BY DIRECTION" stated "this appeal is hereby DISMISSED for want of prosecution because the appellant David Leon Moreland has failed to file an appellant's brief and record excerpts within the time fixed by the rules[.]" (Doc. 168.) The Eleventh Circuit has clearly held, however, that judicial immunity extends to court clerks for actions "they are specifically required to do under court order or at a judge's direction[.]" <u>Tarter v. Hury</u>, 646 F.2d 1010, 1013 (5th Cir.

16

June 1, 1981).[7]  It is difficult for this Court to imagine a task less appropriate for quasi-judicial immunity.

Like Chief Judge Wood and Judge Graham, the two exceptions to judicial immunity likewise do not apply to Ms. Tunstall.  For one, her action dismissing Moreland's appeal was clearly a judicial function.  She entered the dismissal of his appeal in a pending case before the Eleventh Circuit Court of Appeals, at the direction of the court.  As to the second exception, in no way did Ms. Tunstall act in complete absence of jurisdiction. As with the other two Judicial Defendants, Moreland was the one who first invoked the jurisdiction of each court.  He filed his original lawsuit in the Southern District of Georgia, and he filed his Notice of Appeal with the Eleventh Circuit Court of Appeals, which clearly has jurisdiction over appeals filed in this district.

Accordingly, the Court finds that all Judicial Defendants are protected under the doctrines of judicial and quasi-judicial immunity.  Therefore, all claims asserted against these Defendants are hereby **DISMISSED WITH PREJUDICE**.

*iii. Motion to Amend to Add Eleventh Circuit Judges*

Moreland additionally seeks leave to amend his complaint pursuant to Federal Rule of Civil Procedure 15 in order to

---

[7]  See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (holding Fifth Circuit decisions made on or before September 30, 1981, are binding precedent in Eleventh Circuit).

individually name all Eleventh Circuit Court of Appeals judges, active and senior. Rule 15 allows a party to amend its pleading once as a matter of course within 21 days of serving it or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). For the purposes of Rule 15, a motion to dismiss does not qualify as a "responsive pleading." Williams v. Bd. of Regents of Univ. Sys. Of Ga., 477 F.3d 1282, 1291 (11th Cir. 2007).

Prior to Moreland's motion to amend, no Defendant had filed an answer. Under this rule, then, Moreland could have simply filed an amended complaint as a matter of course, presumably leaving this Court with no room to review the pleading. Instead, Moreland chose to file a motion to amend, thereby waiving "the right to amend as a matter of course" and "invit[ing] the District Court to review [the] proposed amendments." Coventry First, LLC v. McCarty, 605 F.3d 865, 869-70 (11th Cir. 2010). If this Court were to accept such an invitation, it very well might find any amendment futile given the sub-par pleading and doctrine of judicial immunity.

However, the Eleventh Circuit has held that a district court may not *sua sponte* dismiss a plaintiff's complaint based on the doctrine of judicial immunity, as it is an affirmative

defense subject to waiver and does not automatically divest the court of subject matter jurisdiction. <u>Mordkofsky v. Calabresi</u>, 159 F. App'x 938, 939 (11th Cir. 2005) (per curiam). Thus, although the Court has serious doubts as to the merits of Moreland's claims against the Eleventh Circuit judges given the doctrine of judicial immunity, it nonetheless reserves for those judges the opportunity to raise that defense.

The Court is similarly troubled by the scarce factual allegations contained in the complaint as they relate to the Eleventh Circuit judges. However, and in light of the deference afforded pro se litigants, the Court finds the correct action at this early stage is to allow Moreland the opportunity to clarify his claims. This result is particularly appropriate given that the Court is granting Moreland leave to amend his complaint as to his Civil RICO claims. **The Court cautions Moreland, however, that any claims against the Eleventh Circuit Court of Appeals judges must similarly comply with all amended pleading requirements detailed below.** This includes any limitations on the types of claims that may be raised and the manner in which they are to be presented.

**B.    Moreland's Complaint and the Pending Motions to Dismiss**

In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. <u>Scheuer v.</u>

Rhodes, 416 U.S. 232, 236 (1974). The court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

As Moreland rightfully recognizes, in this Circuit "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). This liberal construction afforded to pro se pleadings notwithstanding, "a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a 'largely groundless claim' does not proceed through discovery

20

and 'take up the time of a number of other people . . . .'" *Halpin v. David*, No. 4:06-cv-457, 2009 WL 1753759, at *4 (N.D. Fla. June 22, 2009) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). "Hence, even though the pleading standard for a pro se complaint is quite liberal, 'bald assertions and conclusions of law will not suffice.'" *Id.* (quoting *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996)). "Additionally, the court's duty to construe a plaintiff's complaint liberally is not the equivalent of a duty to rewrite it." *Id.*

Moreland's complaint, which spans 100 pages and includes over 200 paragraphs, only specifically identifies four counts: (1) violation of 42 U.S.C. § 1985; (2) violation of Civil RICO; (3) legal malpractice; and (4) conspiracy. From there, the Court is entirely without direction as to any other possible claims. For example, Moreland's complaint is replete with headings referring to general areas of law without any factual support, but instead legal conclusions and/or citation to various cases or statutes.[8] Indeed, a vast many of these

---

[8]    These headings include: (1) "Effects Doctrine Jurisdiction" (Compl. ¶ 72); (2) "RICO Jurisdiction" (id. ¶ 73); (3) "tort claim compliance" (id. ¶¶ 74-77); (4) "Equitable And Injunctive Jurisdiction Upon Lack Of Adequate Remedies Of Law" (id. ¶¶ 78-84); (5) "Immunities And Estoppel" (id. ¶¶ 85-88); (6) "breach of qualified immunities" (id. ¶¶ 89-91); (7) "Breaches Of Judicial Immunities" (id. ¶¶ 92-99); (8) "Common Law Reliance Estoppel" (id. ¶¶ 100-102); (9) "Pro Se Litigants Entitled To Fees" (id. ¶ 103); (10) "USC 14th Amendment Deprived The Use Of Property" (id. ¶ 104); (11) "What Constitutes Property Protected Under Constitution" (id. ¶ 105); (12) "On Due

"claims" — if that is what they are intended to be — include nothing more than a string cite of cases and/or statutes.

With the liberal review pro se pleadings are afforded in mind, the Court ventures to address each of the four identified claims (Legal Malpractice, Conspiracy/Section 1985, and Civil RICO) and then the litany of other legal theories presented.

### i. Legal Malpractice

Moreland alleges that Chief Judge Wood, Magistrate Judge Graham, Terry Readdick, and Garret Meader all committed legal malpractice and "should be reported to the proper authorities." (Compl. ¶ 67.) To support this claim, Moreland contends that Chief Judge Wood and Judge Graham are in violation of Judicial Codes of Conduct, and that Readdick and Meader are in violation of state bar rules for misrepresentation and presenting false statements and documentation before a jury. (Id. ¶¶ 68-69.) Plaintiff alleges that this conduct is "gross" and "malicious" as well as "reckless" and negligent. (Id. ¶ 70.) For that

Process Violation 5th And 14th Amendments" (id. ¶ 106); (13) "Jurisdiction Of The Case (Basic Element Of Due Process)" (id. ¶ 107); (14) "Sense Of Fair Play Shocked Is Not Due Process (Congress Barred)" (id. ¶ 108); (15) "Discrimination As Violation Of Due Process 5th Amendment" (id. ¶ 109); (16) "14th Amendment Is The Due Process [] Right" (id. ¶ 110); (17) "Jurisdictional" (id. ¶¶ 117-18); (18) "Statute Of Limitation And Tolling" (id. ¶ 119); (19) "Dismissal Issue" (id. ¶¶ 120-24); (20) "Rule 60" (id. ¶¶ 125-28); (21) "Federal Judges Oath of Office" (id. ¶¶ 142-43)' (22) "Corrupted Judges" (id. ¶¶ 144-46); (23) "Trespassers of Law" (id. ¶¶ 147-48); (24) "Treason of Judges" (id. ¶ 150); (25) "Perjury in a Judicial Context" (id. ¶ 151); (26) "Obstruction by Intimidation Threats, Persuasion, or Deception" (id. ¶ 152); (27) "Witness Tampering" (id. ¶ 153); and (28) "Obstruction by Destruction of Evidence" (id. ¶ 154).

reason, Moreland seeks compensatory and punitive damages, as well as court costs and expenses. (Id.)

Moreland's claim for legal malpractice must fail. First, Chief Judge Wood and Judge Graham, as detailed above, are immune from suit under the doctrine of judicial immunity. Thus, the only claims that are left are those against the Attorney Defendants. These Defendants, however, at no time represented Moreland — they were opposing counsel. As such, Moreland is not the proper plaintiff to allege such a claim. "Mistakes, if any, by [the Attorney Defendants in the underlying discrimination suit] may give rise to an action for legal malpractice. However, this is a claim that must be brought by [the Attorney Defendants'] client[.]" See Baker v. Eichholz, No. 4:06-cv-021, 2009 WL 62265, at *2 n.2 (S.D. Ga. Jan. 9, 2009). Indeed, the first element that a plaintiff alleging legal malpractice must prove is "employment of the defendant attorney," which Moreland clearly cannot do. See Szurovy v. Olderman, 530 S.E.2d 783, 785 (Ga. Ct. App. 2000). Thus, it would be the Attorney Defendants' client that could bring a claim for legal malpractice. Moreland may not do so on his own behalf simply because he believes their conduct at trial harmed him.[9] Accordingly, Count III is hereby **DISMISSED WITH PREJUDICE.**[10]

---

[9]    As a secondary basis for dismissal, Georgia law is clear that "an attorney's conduct will not support a legal malpractice action solely because the conduct violates the Bar Rules[.]" Allen v. Lefkoff, Duncan, Grimes &

*ii.*     *Conspiracy and Section 1985*

Count I, which is not specifically labeled, appears to begin at Paragraph 47 and alleges violation of 42 U.S.C. §§ 1983 & 1985.   (Compl. ¶¶ 47-54.)   Count IV alleges "Conspiracy" and again cites to § 1985.   (Id. ¶ 71.)   The entirety of Moreland's allegations center on his treatment during his employment discrimination lawsuit filed in 2008.   This case concluded in November 2011 when the Eleventh Circuit Court of Appeals dismissed Moreland's appeal for want of prosecution.[11]

Sections 1983 & 1985 have no independent statute of limitations and instead are governed by the forum state's personal injury statute of limitations.   Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996) ("As to the claims brought here under 42 U.S.C. §§ 1983[] and 1985,[] precedent is clear that these are measured by the personal injury limitations period of the state."); Reynolds v. Murray, 170 F. App'x 49, 50 (11th Cir. 2006)(per curiam).   Here, Moreland filed his complaint in Georgia, where the statute of limitations on personal injury

---

Dermer, P.C., 453 S.E.2d 719, 720 (Ga. 1995).   Thus, to the extent Moreland is claiming that the Attorney Defendants' violated the Code of Professional Responsibility, such claims would fail.

[10]   The Court dismisses this claim with prejudice because it finds that any amendment or additional pleading from Moreland would be futile given that he was at no time a client of the Attorney Defendants.

[11]   Moreland moved to reopen his employment discrimination case based on the alleged conspiracy on February 12, 2015.   No rulings have been made in that action, aside from reassigning the case from Chief Judge Wood to the undersigned.

claims is two years. O.C.G.A. § 9-3-33. And while the statute of limitations is borrowed from state law, "[f]ederal law determines when the statute of limitations begins to run." Koldewey v. Bacon Cnty. Prob. Det. Ctr., No. 5:07-cv-085, 2008 WL 927562, at * 1 (S.D. Ga. Apr. 4, 2008) (quoting Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003)). The statute ordinarily begins to run "from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Reynolds, 170 F. App'x at 51.

Seemingly recognizing that it has been more than two years since the last event occurred in Moreland's conspiracy theory, he makes two arguments to avoid the statute of limitations. First, he argues that "a judgment to dismiss because of some trumped up technicality giving excuse to dismiss a non-lawyer pro se litigant's complaint" would be manifestly unjust.[12] (Doc. 35 at 5.) Second, Moreland seeks to toll the statute of limitations, arguing that Defendants all "continuously and fraudulently concealed their wrongful acts from Plaintiff" and that Moreland has "been diligent in researching, and discovering the cause of action[.]" (Compl. ¶ 119.) To invoke equitable tolling, "[t]he burden is on the plaintiff to show that

---

[12] The Court — while sympathetic to the daunting task pro se litigants face in navigating the complexity of statutes of limitation — is aware of no law allowing for the tolling of the statute of limitations on this basis.

equitable tolling is warranted." <u>Justice v. United States</u>, 6 F.3d 1474, 1479 (11th Cir. 1993). And although "[t]he doctrine of fraudulent concealment is read into every federal statute of limitations," it cannot be said that anything was fraudulently concealed from Moreland. See <u>Hood v. Sweetheart Cup Co.</u>, 816 F. Supp. 720, 727 (S.D. Ga. 1993).

First, merely stating that Defendants "fraudulently concealed their wrongful acts" and tried "to impede and prevent the discovery of this litigation or cause of action" is insufficient to support equitable tolling, as such statements are merely conclusory allegations without factual support. This is particularly true given that a plaintiff must plead with particularity "facts giving rise to a claim of fraudulent concealment before a federal court will toll the statute of limitations." <u>Pedraza v. United Guar. Corp.</u>, 114 F. Supp. 2d 1347, 1356 (S.D. Ga. 2000).

Even so, a complete review of Moreland's complaint and factual allegations demonstrate that the exception, even if properly pled, would not stand. Moreland's claims focus entirely on his employment discrimination litigation. He alleges, *inter alia*, that the Attorney Defendants would not work with him pre-trial, that the judges held biases and prejudices against him, that the Attorney Defendants presented false testimony, and that he was improperly prohibited from presenting

26

evidence at trial — all because of his race and status as a pro se litigant. At every stage of these purportedly corrupt proceedings, Moreland was present. He attended the hearings and conferences where allegedly racist comments were made, he attended the pre-trial conference where his evidence was excluded, he attended trial where the allegedly false statements and documents were presented to the jury, and he received service of all documents and orders in the case. Here, Moreland "simply provides no basis from which the Court could conclude that [he was] ignorant of Defendant[s'] unlawful conduct and, if [he was], whether that ignorance was reasonable." Id. at 1357.

As such, Moreland is not "entitled to the rare and extraordinary remedy of equitable tolling." See Drew v. Dep't of Corr., 297 F.3d 1278, 1289 (11th Cir. 2002). Because Moreland's § 1983 and § 1985 claims arose more than two years before he filed suit, the Court finds that they are time-barred and are hereby **DISMISSED WITH PREJUDICE**.

   iii.   *Civil RICO*

The majority of Moreland's complaint appears to be dedicated to allegations that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68. Under Section 1964, those injured by a RICO violation have a civil cause of action under the Act. To establish a civil RICO violation, Moreland must satisfy four

27

elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988). The RICO statute specifically defines what may constitute "racketeering activity." 18 U.S.C. § 1961(1). To establish a pattern of racketeering activity, there must be at least two predicate acts of racketing activity. Id. § 1961(5).

A RICO violation, which is "essentially a certain breed of fraud," must be pled with particularity. Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007). Rule 9(b), which imposes the heightened pleading standard, can be satisfied when the plaintiff alleges: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff[]; and (4) what the defendants gained by the alleged fraud." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)(per curiam). "[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." Id. at 1381 (internal quotations omitted).

Moreland's complaint does not meet the high standard imposed by the Federal Rules. Instead, his complaint contains mostly conclusory allegations and citations to cases and

statutes. While he does present some facts in the early and late paragraphs of his complaint, he does not identify which facts apply to which claims or which Defendants.

Particularly in light of Moreland's pro se status, the Court finds that leave to amend the complaint would be appropriate, subject to the following conditions:

1. Moreland shall only address those claims not specifically dismissed by this Order.[13] Stated differently, Moreland shall not raise claims for legal malpractice or violations of Sections 1983 and 1985, as they have been dismissed with prejudice.

2. Moreland shall only name Defendants not specifically dismissed by this Order. Stated differently, all claims against Chief Judge Wood, Judge Graham, and Clerk Tunstall have been dismissed as barred by judicial immunity. Moreland shall not raise claims against them in his amended complaint. As noted above, however, Moreland may add the individual Eleventh Circuit Court of appeals judges as defendants.

3. Moreland's amended complaint shall not exceed **TEN (10) PAGES**.

4. For each claim asserted, Moreland shall clearly identify (1) one source of law and/or one legal theory upon which he asserts liability; (2) each defendant against whom he asserts liability on that theory; and (3) the factual allegations that form the basis of each claim against each defendant.

5. Moreland is cautioned if he does not obey the conditions of this order "within the time the court

---

[13]     Moreland, throughout his complaint, refers to a "conspiracy." It is unclear to the Court, however, if he intends to invoke 18 U.S.C. § 1962(d), which makes it unlawful to conspire to violate any of the substantive RICO provisions. If Moreland wishes to allege such a violation in his amended complaint, he is directed to specifically identify such an allegation as a separate count.

sets, the Court may strike the pleading or issue any other appropriate order." FED. R. CIV. P. 12(e).

6. Moreland is finally instructed that "an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading." Schreane v. Middlebrooks, 522 F. App'x 845, 847 (11th Cir. 2013)(internal quotations omitted). Because the Court is granting leave to amend the complaint because of its pleading deficiencies, Moreland **MAY NOT** rely upon, or incorporate by reference, the allegations contained in the original complaint.

Subject to these six conditions, Moreland is hereby **GRANTED** leave to amend his complaint. Moreland shall have **FOURTEEN (14) DAYS** from the date of this Order to file his **FIRST AMENDED COMPLAINT** in accordance with the terms of this Order as a stand-alone entry on the docket. Defendants then shall have **TWENTY-ONE (21) DAYS** to renew their motion to dismiss or otherwise respond to Plaintiff's First Amended Complaint. As it relates to the Eleventh Circuit judges, Moreland is reminded that pursuant to Federal Rule of Civil Procedure 12(a)(2-3), United States employees are afforded **SIXTY (60) DAYS** to respond following proper service.

iv.    *Other Asserted Legal Theories*

As to the twenty-plus legal theories presented in Moreland's complaint, the Court is almost entirely without direction as to how they apply to his set of facts. Instead, Moreland asserts that a court reviewing a pro se pleading must "take notice of and incorporate relevant statutes and rules and precedents even if not pleaded." (Compl. ¶ 124.) Moreland

30

cites the Supreme Court's decision in <u>Haines v. Kerner</u> to support such a high burden on district courts. <u>Haines</u>, however, stands for the proposition that the district court erred in dismissing the pro se plaintiff's complaint because the Court could not "say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" 404 U.S. 519, 520-21 (1972) (quoting <u>Conley v. Gibson</u>, 255 U.S. 41, 45-46 (1957)). Contrary to Moreland's reading of <u>Haines</u>, it does not require this Court to formulate his claims for him simply by referencing countless citations to cases from all over the country.

Moreover, to the extent Moreland asks this Court to sift through every citation of law and every factual allegation that spans his 100-page complaint, the Court declines to do so. The Eleventh Circuit has very clearly condemned this sort of pleading as a "shotgun pleading." A shotgun pleading is one that "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." <u>Wagner v. First Horizon Pharm. Corp.</u>, 464 F.3d 1273, 1279 (11th Cir. 2006). In these types of complaints, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." <u>Frantz v. Walled</u>, 513 F.

31

App'x 815, 820 (11th Cir. 2013) (per curiam) (internal quotations omitted).

Federal Rule of Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and Rule 10 requires that "each separate claim is required to be presented in a separate numbered paragraph, with each paragraph 'limited as far as practicable to a single set of circumstances.'" Hickman v. Hickman, 563 F. App'x 742, 743-44 (11th Cir. 2014) (per curiam) (quoting FED. R. CIV. P. 10(b)). These rules are "procedural rules" to which pro se litigants are required to conform. Id. at 743. However, "[w]hen confronted with a shotgun pleading, the court is supposed to order repleading for a more definite statement of the claim." Id. at 744.

Thus, while the Court will not reconstruct all of Moreland's claims, it will offer him the opportunity to amend his complaint, should he wish to assert some additional claim that the Court was unable to identify. His amended complaint shall be prepared and filed in accordance with the Court's detailed requirements contained in Section II.B.iii.

  *v.*  *Defendants' Supplemental Motions to Dismiss*

Given that Moreland has been granted leave to file an amended complaint, the Court **DENIES** Defendants' supplemental

motions to dismiss. (Docs. 40 & 43.) Defendants may, if appropriate, refile their motions to dismiss upon the filing of Moreland's First Amended Complaint.

## C. Motion to Transfer

With his Motion to Amend (doc. 36), Moreland additionally requests that this case be transferred to the United States Court of Appeals District of Columbia Circuit.[14] Moreland asserts that transfer is appropriate because upon adding the individual Eleventh Circuit Court of Appeals judges, this Court will no longer hold jurisdiction because "a lower court can[not] hear [a] case over an (sic) higher court." (Doc. 36 at 6.)

To support his request for a transfer, Moreland directs the Court to a number of cases that he claims support the proposition that a plaintiff's choice of forum should not be disrupted absent extreme circumstances. The doctrine of forum non conveniens, however, applies in cases where the *defendant* seeks to disrupt a *plaintiff's* choice of forum.

Moreover, the Court is aware of no law that divests a district court of jurisdiction in such a case. Indeed, in a strikingly similar lawsuit, the Tenth Circuit Court of Appeals affirmed the district court's dismissal of a pro se litigant's action against the judges of the Tenth Circuit Court of Appeals.

---

[14] This is not Moreland's first request for a transfer of venue. On September 29, 2014, he requested a transfer to the "District of Columbia Circuit," which this Court denied. (Docs. 6 & 13.)

<u>Switzer v. Coan</u>, 261 F.3d 985, 987 (10th Cir. 2001). There, the pro se plaintiff filed suit alleging, *inter alia*, violation of Civil RICO following a number of adverse rulings from the Court of Appeals. <u>Id.</u> The district court dismissed the complaint for failure to state a claim upon which relief could be granted, and additionally held that the pleading's inadequacy could not be cured by amendment. <u>Id.</u> Although that court did not specifically address the merits of a transfer, implicit in its affirmation of the district court's ruling is that the Court of Appeals found that the district court held jurisdiction over the plaintiff's claims against the circuit judges.

Without any legal authority provided to the contrary, the Court finds that it retains jurisdiction to handle Moreland's case, notwithstanding the fact that he seeks to add the Eleventh Circuit Court of Appeals judges as named defendants.

**D.    Motion for Entry of Default**

On February 12, 2015, Moreland moved for entry of default. It is not entirely clear to the Court which Defendants Moreland believes to be in default. As such, the Court reviews the motion as it might pertain to all named Defendants.

As to the Judicial Defendants, (1) Judge Graham was served on January 5, 2015; (2) Chief Judge Wood was served on January 8, 2015; and (3) Clerk Tunstall was served on January 9, 2015. (Docs. 17, 18, 28.) Pursuant to Federal Rule of Civil Procedure

34

12(a)(3), these government employees must serve an answer to a complaint within 60 days of service. Accordingly, their responses were not due until March 6, 2015, March 9, 2015, and March 10, 2015, respectively. The Judicial Defendants filed their response, a motion to dismiss, on March 6, 2015. (Doc. 47.) Accordingly, the Court finds that these three Defendants were not in default and entry of such would be inappropriate.

As to the Attorney Defendants, Moreland served Garret Meader and Terry Readdick on January 5, 2015. (Docs. 19 & 20.) Pursuant to Federal Rule of Civil Procedure 12(a)(1), these Defendants had 21 days to respond, as there appears to be no indication that they waived service. As such, the Attorney Defendants' motions to dismiss (docs. 30 & 33), which were filed on January 26, 2015, were timely. Thus, these Defendants were similarly not in default.

Finally, as to the Glynn Iron Defendants, the record shows that Defendants Fairman, Vazquez, Conway, E. Corbett, T. Corbett, and Lewis were served on January 5, 2015 (docs. 21-23, 25-27). Defendant Spain was served on January 6, 2015 (doc. 24). These Defendants jointly filed a motion to dismiss within 21 days of service. (Doc. 31.) Accordingly, these defendants are not in default.

To the extent Moreland believes Defendants are in default because they have not yet filed an answer, such an assumption is

incorrect. Rule 12(a)(4) states that, unless the Court provides to the contrary, the serving of a Rule 12 motion (such as a motion to dismiss) alters the time to file an answer. Because all Defendants have filed motions to dismiss, no Defendants are required to file answers until after the Court rules on the pending motions. Based on the foregoing, Moreland's Motion for Entry of Default (doc. 37) is hereby **DENIED**.

**E.    Motion to Dismiss Defendant Lawson and Motion to Withdraw**

On February 18, 2015, Moreland moved to Dismiss Defendant Calvin Lawson without prejudice. (Doc. 38.) Moreland apparently believed that he could not locate Defendant Lawson. On February 23, 2015, Moreland moved to withdraw that motion to dismiss, stating that Defendant Lawson was actually served on February 10, 2015. (Doc. 42.) Defendant Lawson responded to Moreland's complaint on January 26, 2015 with a Motion to Dismiss. (Doc. 31.)

Given that there is no objection, the Court **GRANTS** Moreland's Motion to Withdraw (doc. 42) Moreland's Motion to Dismiss (doc. 38).

**F.    Motion for a Hearing**

Finally, on April 3, 2015, Moreland moved this Court to schedule oral argument "on merits and evidence." (Doc. 55.) The Court finds this motion to be, at best, premature in light of the Court's decision to allow Moreland to amend his

complaint. Moreover, the Court finds that oral argument is unnecessary for those claims dismissed by this Order. Accordingly, Moreland's motion for oral argument (doc. 55) is **DENIED**.

## III.   CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1.   The Judicial Defendants' Motion to Dismiss (Doc. 47) is **GRANTED**.   The Clerk is **DIRECTED** to **TERMINATE** Chief Judge Wood, Judge Graham, and Clerk Tunstall as parties to this action.

2.   The Court **GRANTS IN PART AND DENIES IN PART** Attorney Defendants' and Glynn Iron Defendants' Motions to Dismiss (Docs. 30, 31, & 33.)   The Court **DISMISSES WITH PREJUDICE** Counts I and IV (conspiracy and sections 1983 and 1985) as time-barred.   The Court **DISMISSES WITH PREJUDICE** Count III (legal malpractice) for failure to state a claim.   The Court **DENIES** the motions to dismiss with regard to the Civil RICO claim.

3.   Moreland's Motion to Amend (doc. 36) is **GRANTED IN PART AND DENIED IN PART**.   Moreland is hereby **GRANTED** leave to amend his complaint to address the deficiencies stated herein and, if he desires, to add the Eleventh Circuit judges. Moreland shall have **FOURTEEN (14) DAYS** from the date of this Order to file his **FIRST AMENDED COMPLAINT** in accordance with the terms of this Order as a stand-alone entry on the docket. Defendants then shall have **TWENTY-ONE (21) DAYS**[15] to renew their motion to dismiss or otherwise respond to Plaintiff's First Amended Complaint. The Motion to Amend, however, is **DENIED** as to Moreland's request to transfer venue.

---

[15]   Rule 12(a)(3) of the Federal Rules provides United States employees, such as the Eleventh Circuit judges, sixty days to respond to a complaint.

4.  In light of the Court's ruling on the Motion to Amend, the Glynn Iron Defendants' and Attorney Defendants' Supplemental Motions to Dismiss (Docs. 40 & 43) are **DENIED** with leave to re-file following Moreland's First Amended Complaint.

5.  Moreland's Motion for Entry of Default (doc. 37) is **DENIED**.

6.  Moreland's Motion to Withdraw (doc. 42) his Motion to Dismiss Defendant Lawson (doc. 38) is **GRANTED**.

7.  Moreland's Motion for Oral Argument (doc. 55) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this ___*16th*___ day of April, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA